# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-20389
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
December 9, 2019

Lyle W. Cayce
Clerk

VAL D. EMERY; BETTY A. EMERY,

     Plaintiffs–Appellants,

v.

MEDTRONIC, INCORPORATED; MEDTRONIC USA, INCORPORATED;
MEDTRONIC LOGISTIC, L.L.C.; COVIDIEN, L.P.; COVIDIEN HOLDING,
INCORPORATED; COVIDIEN SALES, L.L.C.,

     Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-358

Before OWEN, Chief Judge, and SOUTHWICK and WILLETT, Circuit Judges.

PER CURIAM:*

    Val D. Emery and Betty A. Emery appeal the summary judgment in favor of Medtronic, Inc., the district court's denial of their motion to compel discovery, and the district court's denial of their motion for extension of time to respond to the summary judgment motion. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-20389

**I**

Val Emery underwent two hernia repair surgeries, one in 2013 and one in 2017.  During Emery's first surgery, Dr. Buckminster Farrow implanted a Parietex™ Composite (PCO) mesh into the upper-left quadrant of Emery's abdomen.  The PCO mesh is a prescription surgical-mesh medical device made of polyester, manufactured by Covidien (now known as Medtronic).  Dr. Farrow testified that he implanted the mesh so that a portion of it extended past the midline in the upper part of Emery's abdomen.  Dr. Zhen Fan performed Emery's second hernia repair surgery.  Both Dr. Farrow and Dr. Fan stated in their depositions that the second hernia was located in a different part of the abdomen than the first hernia.  During the second surgery, which was on the midline area of Emery's abdomen, Dr. Fan found old mesh.  His operative notes state that the mesh "had migrated [] mostly to the left side of the abdominal wall."  However, Dr. Fan later stated in his deposition that "[i]f this is the mesh from Dr. Farrow's repair, it did not migrate."  Both Dr. Farrow and Dr. Fan testified that they did not believe Medtronic's mesh was defective.

Emery sued Medtronic in the District Court of Harris County, Texas, alleging manufacturing, design, and marketing defect claims, on both strict liability and negligence theories.  Emery asserted a *res ipsa loquitur* claim in the alternative.  Emery's wife Betty also brought derivative claims related to his alleged injuries.  Emery served written discovery requests on Medtronic, to which Medtronic responded, save for the request for production of documents.  Medtronic stated that it had responsive documents to produce, but due to their confidential nature, it could not produce them without entry of a protective order.  Neither party secured such an order, and Medtronic did not produce the documents.  Medtronic later removed the case to the United States District Court for the Southern District of Texas.  In the federal district court, Emery alleged that the PCO mesh implanted by Dr. Farrow was "defectively designed

2

because it was made out of polyester, which was soft and flimsy, and had unsealed edges." Emery alleged that this design defect caused him to re-herniate. Emery also alleged marketing defect claims and alternative counts for *res ipsa loquitur* and circumstantial evidence of defect.

After the deadline for Emery to designate experts had passed without Emery having designated any, Medtronic moved for summary judgment. The district court then granted a pending motion to dismiss filed by Medtronic on Emery's *res ipsa loquitur* and marketing defect claims. Emery does not appeal these dismissals. Emery responded to Medtronic's motion for summary judgement and simultaneously moved to extend the deadline to respond to the motion. The district court decided that it would consider Medtronic's motion for summary judgment before ruling on Emery's motion for extension. Mere hours before the summary judgment hearing, Emery filed a motion to compel with respect to the discovery requests that had been served on Medtronic more than twenty-one months before in state court. The district court granted Medtronic's motion for summary judgment as to the design defect claim and dismissed all of Emery's remaining claims. It declined to grant Emery's motion for extension of time and denied as moot his motion to compel. Emery appeals the summary judgment in favor of Medtronic and the order denying his motion to compel and motion for extension.

## II

We review a district court's grant of summary judgment de novo.[1] We apply the same standards as the district court, granting summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] We view the

---

[1] *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 275 (5th Cir. 2014) (citing *DePree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009)).

[2] FED. R. CIV. P. 56(a).

evidence in the light most favorable to the non-moving party and avoid credibility determinations and weighing of the evidence.[3]  Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[4]  In that case, there is no dispute as to a material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[5]

To prove a design defect under Texas law, "a plaintiff must prove that (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery."[6]  We need not address the first two elements here because Emery has failed to make a sufficient showing on the third element.  To be a producing cause, "(1) the cause must be a substantial cause of the event in issue and (2) it must be a but-for cause, namely one without which the event would not have occurred."[7]  Emery has failed to produce any evidence that would allow a factfinder to determine that the alleged defect in the mesh was the cause of his injury—the second hernia.  Emery claims that the defect in the mesh caused a recurrence of the original hernia, but both doctors that operated on him testified in their depositions that the second hernia was in a different location from the first. Emery has produced no evidence to explain how the defect in the mesh caused

---

[3] *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002) (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000)).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[5] *Id.* at 322-23.

[6] *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1040 (5th Cir. 2011) (quoting *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009)).

[7] *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007).

a second hernia in a different location, nor would he be able to do so at trial without expert testimony. "Under Texas law, expert testimony is generally encouraged if not required to establish a products liability claim. In particular, expert testimony is crucial in establishing that the alleged design defect caused the injury."[8] A factfinder cannot determine the cause of a hernia through lay testimony alone. "Lay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition."[9] This is not one of those cases. We agree with the district court that "medical malpractice and product liability cases are quintessentially expert cases." Because Emery failed to designate any experts, he will be unable to bear the burden of proof at trial. Summary judgment was thus appropriate.

## III

Emery also claims that the district court erred in denying his motion to compel discovery and in failing to grant him an extension of time for additional discovery in order to oppose the motion for summary judgment. "We review a district court's discovery decisions for abuse of discretion and will affirm such decisions unless they are arbitrary or clearly unreasonable."[10] The district court did not abuse its discretion. Emery did not move to compel discovery until the morning of the summary judgment hearing after the case had been in federal court for over a year. Emery has no explanation for this delay. It was not arbitrary or clearly unreasonable for the district court to deny the

---

[8] *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 409 (5th Cir. 2016) (internal quotation marks omitted).

[9] *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984) (citing *Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 706 (Tex. 1970)).

[10] *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000) (citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1441-42 (5th Cir. 1993)).

No. 19-20389

motion to compel under these circumstances.[11]  Nor was it arbitrary or clearly unreasonable for the district court to deny Emery more time to conduct discovery before ruling on the motion for summary judgment.  Rule 56(d) requires the nonmovant to show "specified reasons [that] it cannot present facts essential to justify its opposition" before the court can defer considering the motion.[12]  Emery showed no such reasons.  It is immaterial that the discovery period had not closed before the district court ruled on Medtronic's motion for summary judgment.  The deadline for Emery to designate experts had passed, and Emery's design defect claim could not survive summary judgment without expert testimony.

\*          \*          \*

Accordingly, the judgment of the district court is AFFIRMED.

---

[11] *See Curry v. Strain*, 262 F. App'x 650, 652 (5th Cir. 2008).
[12] FED. R. CIV. P. 56(d).